

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-16-880

|  |  |
|---|---|
| | **Opinion Delivered** April 5, 2017 |
| PRESTON LEE GAMET | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 63CR-15-418] |
| V. | |
| STATE OF ARKANSAS | HONORABLE GARY ARNOLD, JUDGE |
| APPELLEE | AFFIRMED |

## DAVID M. GLOVER, Judge

Preston Lee Gamet was tried by a Saline County Circuit Court jury and found guilty of the offenses of DWI – first offense, an unclassified misdemeanor, and criminal mischief in the second degree, a Class D felony. He raises three points on appeal: 1) there was insufficient evidence for his two convictions; 2) the trial court erred in finding that he was not "in custody" for the purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966), and in admitting his initial statements to law enforcement following the accident; and 3) the trial court committed reversible error by failing to give him a meaningful opportunity for allocution. We affirm.

On June 14, 2015, Gamet was driving his truck when it struck several houses on a street in Saline County. His blood–alcohol level was tested at .09 after the incident. At trial, he testified he had taken an Ambien and did not remember anything until he found himself in the backseat of a patrol car.

As his first point of appeal, Gamet contends that neither of his convictions are supported by substantial evidence because a) there was insufficient evidence he possessed the culpable mental state required for conviction under the DWI statute in effect at the time of the incident; b) there was insufficient evidence of actual damages for him to be convicted of criminal mischief in the second degree as a Class D felony; and c) there was insufficient evidence he committed a voluntary act by driving his car. We are unable to address the merits of these arguments because they were not properly preserved.

After Gamet had renewed both of his motions for directed verdict, he asked for, and was given permission to "reopen very quickly and introduce [his] Exhibit No. 1, the medical records." There was no objection, and the medical records from Gamet's physician were admitted. According to the abstract, which is confirmed by the record, Gamet did not then renew his motions for directed verdict. That failure is fatal to his sufficiency challenges.

In *Davis v. State*, 2009 Ark. 478, at 5–6, 348 S.W.3d 553, 557, our supreme court explained:

> This court has had occasion to rule that a renewal of a motion for directed verdict made after the jury has been charged or instructed is not timely. This court has also had occasion to rule that a renewal of a motion for directed verdict made at the conclusion of the defendant's case-in-chief followed by a failure to renew after the State presents rebuttal evidence operates as a waiver. However, we have not previously had before us a case such as the present one where a defendant failed to renew his motion after reopening his own case to admit additional documents into evidence.
>
> We conclude that the reasoning we applied in *Christian* is likewise applicable here. The plain language of Rule 33.1 requires that the motion be renewed at the close of *all* the evidence. The failure to do so operates as a waiver of any question relating to the sufficiency of the evidence to support the jury's verdict. We interpret Rule 33.1 strictly. *Appellant's failure to renew his motion for directed verdict at the close of all the evidence, after he reopened his case to admit*

*four documents into evidence, therefore operates as a waiver of his challenge to the*
*sufficiency of the evidence to support the jury's verdict.*

(Emphasis added.) (Citations omitted.) The *Davis* case dictates the outcome of this issue. We are unable to address the merits of Gamet's arguments because he waived the issues when he failed to renew his directed-verdict motions after reopening the case to introduce the medical records.

For his second point of appeal, Gamet contends the trial court erred in denying his motion to suppress, particularly in finding he was not "in custody" for the purposes of *Miranda, supra*, and allowing the State to admit the statements he made to a law-enforcement officer immediately following the incident. We disagree.

In reviewing a trial court's denial of a suppression motion, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the trial court. *Wells v. State*, 2017 Ark. App. 174. We defer to the trial court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.*

Officer Eric Staten testified at the suppression hearing on June 20, 2016. He explained he was a patrol officer for Shannon Hills on June 14, 2015, and he responded to a vehicular collision on Skyline Drive, where he made contact with Preston Gamet. Upon arriving at the scene, Officer Staten saw a truck inside a house. He stated that several people were standing around, but no one was in the vehicle by the time he arrived. He said that Gamet voluntarily told him he had been the driver of the vehicle. Officer Staten asked Gamet if he needed medical attention, and Gamet responded that he did not. The officer

said he noticed redness in Gamet's eyes and the smell of intoxicants. He asked Gamet about the intoxicants, and Gamet admitted he had been drinking. He said he then asked Gamet how his truck got inside the house, and Gamet told him, he was returning from the grocery store when he saw some headlights coming toward him, and he tried not to hit the oncoming headlights. Gamet told the officer he did not remember anything after that. Officer Staten stated that he placed Gamet in the patrol car for his safety and asked a deputy to take him to the Saline County Detention Center for a breath-alcohol test. He later made contact with Gamet at the Saline County jail; checked on the breathalyzer results, which were over the limit; and arrested Gamet for DWI. On cross-examination, Officer Staten acknowledged that he would not have allowed Gamet to leave the scene and that he did not read Gamet his *Miranda* rights at the scene.

Gamet testified at the suppression hearing. He said he did not remember telling the officer that he was the one driving the truck and that all he really remembered was from the time he was in the back of the police car forward.

The statements Gamet sought to suppress were his admissions that he was the driver of the vehicle, that he had been drinking, and that he was trying to avoid oncoming headlights. The trial court concluded that Gamet was not in custody at the time he gave those statements, that the officer was conducting a preliminary investigation at the scene, and that the motion to suppress should be denied.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides,

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to

property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Lawful detention under Rule 3.1 does not curtail a person's freedom of action to a degree associated with a formal arrest such that a *Miranda* warning is required. *Wells*, *supra*.

Here, Officer Staten was called to a scene where a vehicle had plowed into several houses. Gamet voluntarily told the officer he was the vehicle's driver. As the officer approached him, he noticed Gamet's eyes were red and he smelled of intoxicants. Based on those observations, the officer asked Gamet if he had been drinking, and Gamet admitted he had. Officer Staten's contact with Gamet that resulted in these statements of ownership of the vehicle resting inside a house, acknowledgement of his drinking, and explaining the surrounding events did not amount to a curtailment of Gamet's freedom of action to a degree associated with a formal arrest so as to require a *Miranda* warning. There is no basis for reversing the trial court's denial of Gamet's motion to suppress.

For his final point of appeal, Gamet contends the trial court committed reversible error by failing to give him a meaningful opportunity for allocution. We disagree.

Arkansas Code Annotated section 16-90-106 (Repl. 2016) provides in part that a defendant appearing for judgment must be asked by the trial court if he has any legal cause to show why judgment should not be pronounced against him. The failure to allow defendant to do so can amount to reversible error. *Goff v. State*, 341 Ark. 567, 19 S.W.3d

SLIP OPINION

579 (2000). However, we do not reverse for failure to allow allocution where there has been no objection to the failure below. *Id.*

Here, Gamet did not object to the trial court's failure to ask him if he had any legal cause to show why judgment should not be pronounced against him. Consequently, in the absence of a proper objection to the trial court, we will not reverse on this basis. *Id.* Furthermore, Gamet testified at his sentencing hearing and therefore suffered no prejudice from the trial court's failure to specifically ask him if he had any legal cause to show why judgment should not be pronounced against him. *See Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998).

Affirmed.

HIXSON and BROWN, JJ., agree.

*James Law Firm*, by: *Bobby R. Digby II* and *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.